UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

EDWIN PATINO,                :   CIVIL ACTION NO. 3:CV-07-0426
                               :
        Petitioner       :   (Judge Nealon)
                               :
    v.                    :   **FILED**
                               :   **SCRANTON**
EDWARD KLEM, et al.,     :
                               :   MAR 1 1 2008
        Respondents   :
                                 PER _____
                                 DEPUTY CLERK

## MEMORANDUM AND ORDER

Petitioner, Edwin Patino, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He attacks a conviction imposed by the Court of Common Pleas for York County, Pennsylvania. (Doc. 1). For the reasons that follow, the Court will deny the petition.

**Background**

The following background has been extracted from the Pennsylvania Superior Court's August 19, 2004 Opinion affirming the trial court's judgment. (Doc. 15, Superior Court Opinion at pp. 2-4).

> In the spring of 2002, Corporal Blake McBride of the York County
> Drug Task Force and Officer Damon Greathouse of the Lancaster
> Police Department were working together on a joint narcotics
> investigation. At around 11:15 a.m. on the morning of May 30, 2002,

Officer Greathouse was directed to the area of Queen and Liberty Streets in York where several other officers were working surveillance. When Greathouse arrived there, he met Jimmy Jordan, then a confidential informant, who directed him to Patino. Patino approached the open right-side passenger window of Officer Greathouse's unmarked vehicle and asked the officer what he needed. Officer Greathouse responded that he needed "Montega", which is a street name for heroin. Patino asked Greathouse how much he wanted, and Greathouse told him three bags. The two then discussed a price, with Greathouse offering $50 and Patino countering with $55 for the three bags. At that point, Jordan got in the front passenger side of the car and Patino got in the rear passenger seat. Patino than directed Greathouse around the block to the intersection of Church and Miller Lane. When they arrived at that intersection, Patino gave Greathouse the bags of heroin in exchange for $60. When Greathouse asked Patino for change, Patino claimed he had none. Greathouse and Patino argued a little about the change but eventually Greathouse relented and Patino exited the vehicle. Patino went back towards Queen Street and Greathouse left the area in his vehicle.

Upon leaving the area, Greathouse telephoned a description of Patino to other officers in the area, describing him as an Hispanic mail with a light gray cap, a white muscle shirt, and Tommy Hilfiger blue jeans. Corporal McBride sent Detective James McBride, his brother, into the area to find Patino and take a photograph of him. Approximately 10 minutes after receiving Officer Greathouse's description, Detective McBride pulled up to the intersection of Queen and Liberty Streets and saw a group of individuals, including Patino, standing on the corner. The detective took photographs of Patino, whom he knew and who matched the description provided by Officer Greathouse.

Later in the day on May 30, Detective McBride went back to the police station and retrieved a separate Polaroid photograph of Patino. When Officer Greathouse returned for duty the next morning, Detective McBride showed Officer Greathouse the Polaroid of Patino,

who Officer Greathouse identified as the individual from whom he had purchased heroin the day before. Later in the afternoon of May 31, Detective McBride showed Officer Greathouse the surveillance photographs he had taken of Patino the day before. Officer Greathouse again identified Patino as the one who sold him the heroin. Patino subsequently was arrested on June 17, 2002 after Officer Greathouse recognized him while conducting an investigation in York[1]

On February 21, 2003, Patino filed an omnibus pretrial motion to suppress Officer Greathouse's identification of him, which the trial court denied. After a two-day trial, Patino was convicted by a jury on May 20, 2003 of the aforementioned charge. Subsequently, on July 9, 2003, Patino was sentenced to 33 to 66 months incarceration.

Id.

On August 26, 2003, Petitioner filed a direct appeal to the Pennsylvania Superior Court in which he raised the following issues:

1.   Did the honorable trial court err by denying Appellant's omnibus pre-trial motion to suppress identification evidence, when the pre-trial identification through use of single photograph violated Appellant's due process rights under the Pennsylvania and United States Constitutions, since the identification was unduly suggestive?

2.   Whether the honorable trial court committed reversible error by refusing Appellant's request for a mistrial, when

---

[1]After Patino's arrest, Officer Greathouse attended a line-up that included Patino, where he again identified Patino as the person who sold him the heroin on May 30.

3

a Commonwealth witness testified about a photograph
that was obtained from the police station?

3.     Whether the evidence presented at trial was sufficient, as
a matter of law, to convict Appellant of delivery of
heroin?

Id. at pp. 3,4. On August 19, 2004, the Pennsylvania Superior Court affirmed the

Petitioner's conviction per curiam. Id.

On October 19, 2004, Patino filed a petition under Pennsylvania's Post

Conviction Relief Act, 42 Pa.C.S.A. §§ 9541, et seq. ("PCRA"). (Doc. 15,

Commonwealth of Pennsylvania v. Patino, Criminal Docket at p. 20). By Order

dated October 20, 2004, the PCRA Court appointed counsel for Patino and

scheduled a hearing. Id. at p. 21.

On February 14, 2005, a hearing was held on Patino's PCRA petition. Id. at

p. 22. Following the hearing, the PCRA Court denied Patino's PCRA petition. Id.

On February 23, 2005, Patino filed an appeal to the Pennsylvania Superior Court

from the PCRA court's denial of his PCRA petition. Id. The Pennsylvania

Superior Court affirmed the denial of Patino's PCRA petition on March 8, 2006.

Com. v. Patino, 898 A.2d 1132 (March 08, 2006) (Table). Petitioner then filed a

petition for allowance of appeal to the Pennsylvania Supreme Court which was

4

denied on August 10, 2006. <u>Com. v. Patino</u>, 588 Pa. 779, 906 A.2d 541 (Aug. 10,

2006) (Table).

On March 6, 2007, Patino filed the instant petition for writ of habeas corpus

in which he raises the following challenges to his conviction and sentence:

1.   The police lineup was impermissibly suggestive.

2.   The evidence at trial was insufficient to sustain the
     verdict of guilt beyond a reasonable doubt.

3.   Officer McBride's testimony that he had a picture of
     Petitioner from the police station and showed it to
     Officer Greathouse, rendered the trial fundamentally
     unfair.

(Doc. 1, petition).

In accordance with <u>United States v. Miller</u>, 197 F.3d 644 (3d Cir. 1999) and

<u>Mason v. Meyers</u>, 208 F.3d 414 (3d Cir. 2000), the Court issued formal notice to

Patino that he could either have the petition ruled on as filed, that is, as a § 2254

petition for writ of habeas corpus and heard as such, but lose his ability to file a

second or successive petition, absent certification by the court of appeals, or

withdraw his petition and file one all-inclusive § 2254 petition within the one-year

statutory period prescribed by the Antiterrorism Effective Death Penalty Act

("AEDPA"). (Doc. 4). On March 26, 2007, Patino returned the notice of election

5

form, indicating that he wished to proceed with his petition for writ of habeas

corpus as filed. (Doc. 5). Thus, a Show Cause Order was issued on April 4, 2007.

(Doc. 7). On June 18, 2007, the District Attorney of York County filed a response

to the petition. (Doc. 15). On June 21, 2007, Patino filed a traverse. (Doc. 16).

## Standards of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper

mechanism for a prisoner to challenge the "fact or duration" of his confinement.

Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973). "[I]t is not the province of a

federal habeas court to reexamine state-court determinations on state-law

questions." Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Rather, federal habeas

review is restricted to claims based "on the ground that [petitioner] is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

2254(a); Estelle, 502 U.S. at 67-8 (1991); Pulley v. Harris, 465 U.S. 37, 41 (1984);

Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

### A. Exhaustion

Habeas corpus relief cannot be granted unless all available state remedies

have been exhausted, or there is an absence of available state corrective process, or

6

circumstances exist that render such process ineffective to protect the rights of the applicant.  See 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.  See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999).  Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts."  Castille v. Peoples, 489 U.S. 346, 351 (1989).  Fair presentation also requires the petitioner to raise the claim in a procedural context in which the state courts can consider it on the merits.  Id.  Petitioner has exhausted all of the claims raised in his petition.   Thus, the Court will address the merits of each claim.

**B. Merits**

Section 2254(d) of Title 28 of the United States Code provides, in pertinent

part, that an application for a writ of habeas corpus premised on a claim previously

adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law "it

is not sufficient for the petitioner to show merely that his interpretation of Supreme

Court precedent is more plausible than the state court's; rather, the petitioner must

demonstrate that Supreme Court precedent requires the contrary outcome." Matteo

v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999).  Similarly, a federal court will

only find a state court decision to be an unreasonable application of federal law if

the decision, "evaluated objectively and on the merits, resulted in an outcome that

cannot reasonably be justified under existing Supreme Court precedent." Id.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume

that a state court's findings of fact are correct.  A petitioner may only rebut this

presumption with clear and convincing evidence of the state court's error.

Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and

8

convincing standard in § 2254(e)(1) applies to factual issues, whereas the

unreasonable application standard of § 2254(d)(2) applies to factual decisions)

Matteo, 171 F.3d at 888; Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005).

This presumption of correctness applies to both explicit and implicit findings of

fact. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a

habeas petitioner "must clear a high hurdle before a federal court will set aside any

of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98

(1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual

determination should be adjudged "unreasonable" under paragraph (2) only if the

court finds that a rational jurist could not reach the same finding on the basis of the

evidence in the record. 28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp 2d

278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th

Cir. 2000); cf. Jackson vs. Virginia, 443 U.S. 307, 316 (1979). "This provision

essentially requires the district court to step into the shoes of an appellate tribunal,

examining the record below to ascertain whether sufficient evidence existed to

support the findings of fact material to the conviction." Breighner v. Chesney, 301

9

F. Supp 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[2]).

Mere disagreement with a determination or credibility judgment of the state court

is insufficient to permit relief.  Porter, 276 F. Supp 2d at 296; see also Williams v.

Taylor, 529 U.S. 362, 408-09 (2000); Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir.

2001).  Only when the finding lacks evidentiary support in the state court record or

is plainly controverted by evidence therein should the federal habeas court

overturn a state court's factual determination.  Porter, 276 F. Supp 2d at 296; see

also Williams, 529 U.S. at 408-09.

## 1.    **Alleged Violation of Fourteenth Amendment**

Pretrial identification procedures violate due process when they are

"'unnecessarily suggestive'" and create a "'substantial risk of misidentification.'"

United States v. Emanuele, 51 F.3d 1123, 1128 (3d Cir. 1995) (quoting

Government of V.I. v. Riley, 973 F.2d 224, 228 (3d Cir. 1992)).  Any

suggestiveness may be negated by the following reliability factors.  Id. (quoting

---

[2]"If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination."  28 U.S.C. § 2254(f).

Manson v. Brathwaite, 432 U.S. 98, 106 (1977)). "[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [her] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Brathwaite, 432 U.S. at 114 (citing Neil v. Biggers, 409 U.S. 188, 199-200 (1972)). We examine the identification in light of the "'totality of the circumstances.'" United States v. Emanuele, 51 F.3d 1123, 1128 (3d Cir. 1995) (quoting Riley, 973 F.2d at 228). Considering the identification claim, the Pennsylvania Superior Court articulated a standard which is clearly in line with prevailing federal law:

> In reviewing the propriety of admitting identification evidence, we must consider, based on the totality of the circumstances, whether the identification was reliable. Commonwealth v. Meachum, 711 A.2d 1029, 1034 (Pa. Super. 1998). This Court will not hold that an out-of-court identification should have been suppressed unless the facts of record demonstrate that the identification procedure employed by the police was so impermissibly suggestive as to create a substantial likelihood of irreparable misidentification. Commonwealth v. Burton, 770 A.2d 771, 782 (Pa. Super. 2001). The factors to be considered in determining whether an identification was impermissibly suggestive are: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witnesses' degree of attention; (3) the accuracy of the witnesses' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation;

and (5) the length of time between the crime and the confrontation."
Commonwealth v. Carter, 643 A.2d 61, 71 (Pa. Super. 1994).

(Doc. 15, Pa. Superior Court Opinion at p. 5). Patino does not argue that this

decision was contrary to, or involved an unreasonable application of, clearly

established federal law. Patino contends that the state courts' conclusion is not

supported and based on an unreasonable determination of the facts in light of the

evidence presented. Specifically, he argues that "Officer Greathouse identified

Petitioner from a single Polaroid photograph as the individual he purchased

narcotics from on the proceeding day, after which he identified Petitioner from

surveillance photographs taken on the day of the alleged transaction." (Doc. 1, p.

6, Ground One). He concludes that the police lineup in which Petitioner was

identified was impermissibly suggestive in violation of the Fourteenth

Amendment. Id.

   The Superior Court addressed the issue at length as follows:

   Patino argues that Officer Greathouse's identification of him in this
   case was unduly suggestive because the officer did not have an
   adequate opportunity to view him at the time of the alleged crime, the
   description Officer Greathouse gave to supporting officers was not
   completely accurate, the officer did not immediately recognize Patino
   at the lineup conducted after Patino's arrest, and a full day elapsed
   between the time of the alleged crime and identification.

We agree with the trial court, however, that under the totality of the circumstances present in this case, Officer Greathouse's identification of Patino was appropriate and the procedure was not unduly suggestive. As the trial court noted in its opinion written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Officer Greathouse had a substantial opportunity to view Patino. He spent between two and five minutes with Patino in broad daylight, during which time he observed Patino and observed the clothing he was wearing. Moreover, as the pictures taken by Detective James McBride minutes after the transaction took place clearly show, Officer Greathouse provided a very accurate description of Patino to Detective McBride.[3] As to the level of certainty Officer Greathouse displayed in identifying Patino as the one from whom he bought drugs on May 30, 2002, Detective McBride testified at the suppression hearing that when Officer Greathouse looked at the photographs McBride had taken on May 30, he "knew right away" Patino was the one from whom he had purchased drugs on that day. (N.T. Suppression Hearing, 3/31/03, at 10.) Officer Greathouse also testified at the suppression hearing that he immediately recognized Patino from the photographs shown to him the day after he purchased drugs from Patino on May 30, and was "completely certain" Patino was the one who sold him drugs on that day. (Id. at 18, 20). Finally, with respect to the last factor under Carter, supra, the length of time between the crime and the identification, Officer Greathouse first identified Patino the morning of May 31 as the man who sold him heroin the day before. He made this identification after Detective McBride showed him a Polaroid photograph of Patino that the detective had obtained from police files. Officer Greathouse again positively identified Patino later in the day on May 31, after McBride showed him the surveillance photographs he had taken of Patino the day before. Under these circumstances, we find no error in the trial

---

[3]The photographs taken by Detective McBride show a Hispanic male wearing a white cap with no logo, white muscle shirt, and dark blue Tommy Hilfiger jeans.

court's conclusion that Officer Greathouse's identification of Patino
was reliable, and not the result of an impermissibly suggestive
procedure.  We therefore find no error in the trial court's refusal to
suppress the identification, and reject  Patino's argument in this
regard.

(Doc. 15, Pa. Superior Court Opinion at pp. 5-7).  There is no question that the

state court decision was based on a reasonable determination of the facts in light of

the evidence presented.  In considering these same facts, this Court also rejects the

claim of suggestiveness because there is simply no indication that the

identification procedures were suggestive, nor has Petitioner pointed to any

procedures that were suggestive.  This failure in itself is enough to reject this claim

and find that Patino is not entitled to relief.  See United States v. Mathis, 264 F.3d

321, 330-31 (3d Cir. 2001).

## 2.   Sufficiency of the Evidence

Patino claims that the "evidence was insufficient to sustain the verdict of

guilt beyond a reasonable doubt."  (Doc. 1, p. 7, Ground Two).

In its analysis of the sufficiency of the evidence, the Pennsylvania Superior

Court was guided by the following standard of review:

Initially, we note that in evaluating a challenge to the sufficiency of
the evidence, we must determine "whether, viewing the evidence in

14

the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the trier of fact could have determined all the elements of the crime have been established beyond a reasonable doubt." Commonwealth v. Jenkins, 687 A.2d 836, 837 (Pa. Super. 1996)(citation omitted). Any question of doubt is for the factfinder, "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances." Commonwealth v. Foreman, 797 A.2d 1005, 1011 (Pa. Super. 2002).

(Doc. 15, Superior Court Opinion at pp. 10-11). The state superior court agreed with the trial court's Opinion "that there was sufficient evidence presented from which the jury could have concluded that Patino delivered heroin to Officer Greathouse." Id. at p. 11.

Both the trial court and superior court's analysis is clearly in accord with applicable federal law. Sufficiency of the evidence claims are governed by Jackson v. Virginia, 443 U.S. 307 (1979), in which the Supreme Court held that the question for habeas courts is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319.

When historical facts support conflicting inferences, the habeas court must presume that the trier of fact resolved those conflicts in favor of the prosecution.

15

Id. at 326.  The habeas court must also consider the types of evidence the state

courts deem relevant to prove the elements of the offense at issue because the

elements of the criminal offense are defined by state law.  Id. at 324 n. 16.

With regard to the controlled substance charge, it is Patino's position that

"two of the three law enforcement officers who testified at trial did not see any

delivery occur.  Petitioner's conviction is based solely on the testimony of Officer

Greathouse, who indicated at trial that he only identified Petitioner in a lineup after

he had an opportunity to view tattoos on his arm, that he did not remember on the

day of the alleged transaction, rather he only remembered them based on previous

photo viewing the day after the alleged transaction."  (Doc. 1, p. 7, Ground Two).

Under Pennsylvania law, a person is guilty of delivering a controlled

substance if he is found to have transferred a controlled substance to another

person.  Commonwealth v. Metzger, 372 A.2d 20 (Pa. Super. 1977); 35 P.S. § 780-

113(a)(30); see also 35 P.S. § 780-102 (defines delivery as "the actual,

constructive, or attempted transfer from one person to another of a controlled

substance, other drug, device or cosmetic").

The trial court held that there was sufficient evidence to support the

16

conviction for delivering heroin, relying on the following evidence:

> Officer Greathouse testified that on the date in question he was directed by the confidential informant to Mr. Patino. He stated that he purchased three (3) bags of heroin from Mr. Patino for the sum of $60.00. We believe that this testimony combined with the Stipulation that the substances Officer Greathouse obtained were indeed heroin is sufficient to convict Mr. Patino.

(Doc. 15, Ex. D, p. 12). The trial court's analysis is cogent and entirely consistent with federal standards. Patino is not entitled to relief on this claim.

### 3.   Improper Admission of Testimony

Patino challenges the admission of testimony by the trial court of Commonwealth witness Detective McBride who testified that he retrieved a Polaroid photograph of Patino from police files and showed it to Officer Greathouse. (Doc. 1, p. 9, Ground Three).  Patino contends that McBride's testimony that he knew the Petitioner, "suggested to the jury that Petitioner had a prior criminal history", thereby rendering Petitioner's trial fundamentally unfair Id.

The issue of Detective McBride's testimony was squarely addressed by the

17

Pennsylvania Superior Court on direct appeal.  The state court held that the decision whether to declare a mistrial is within the sound discretion of the trial judge and will not be reversed absent an abuse of discretion.  <u>Commonwealth v. Riggins</u>, 542 A.2d 1004, 1008 (Pa. Super. 1988).  The court further found that although admitting into evidence testimony from which a jury can infer past criminal conduct by the defendant ordinarily constitutes reversible error, <u>see</u> <u>Commonwealth v. Allen</u>, 292 A.2d 373, 375 (Pa. 1973), reference to a police photograph of the defendant, without more, does not impermissibly allude to a prior criminal history.  <u>Commonwealth v. Young</u>, 2004 WL 1175314, at * 4 (Pa. May 27, 2004).  "It is only those references that expressly or by reasonable implication also indicate some involvement in prior criminal activity that rise to the level of prejudicial error."  <u>Id</u>.  Finally, the court determined that a trial court may remove taint caused by improper testimony through curative instructions.  <u>Commonwealth v. Bracey</u>, 831 A.2d 678, 682 (Pa. Super. 2003).  However, the court must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required.  <u>Id</u>.

In reviewing the evidence, the Superior Court found the following:

In this case, Detective McBride's testimony that he retrieved a Polaroid photograph of Patino from police files, without more, does not suggest prior criminal conduct.[4]  Moreover, we find that the trial court removed any possible taint in this regard by giving the following curative instruction:

> THE COURT: All right.  Ladies and Gentlemen, while we are waiting for the witness to come in, I am not sure why he is not in the courtroom yet, but at any rate, when he does come in, before he comes in, I wanted to instruct you about something that occurred during the Commonwealth's case.
>
> If you'll recall, Detective McBride, the gentleman who took the photos, he talked about how he had presented a photograph, particularly the Polaroid photo, of the Defendant to detective – or to Officer Greathouse.  I believe this testimony was that he had obtained that photo from the police station.
>
> The fact that the Defendant had a photo on file at the police station should not prejudice you in any manner in this particular case.  Frankly, I'm not certain how the police got a hold of the photo of the Defendant.
>
> Neither of the parties informed me as to how the photo arrived at the police station; but nonetheless, the fact that the police had a photo of the Defendant in their possession should not affect your decision in the case one

---

[4]We further note that neither the photograph itself nor Detective McBride's description of it at trial made any allusion to the photograph being a "mugshot" from which jurors could conclude prior criminal activity.

19

> way or the other.
>
> You shouldn't hold it against the Defendant that his
> photo was with the police or at the police station, and you
> should not hold it against the Commonwealth for the fact
> that they had a photo of him at the police station.  So you
> should just totally disregard the fact that the photo came
> from the police station or it was in the possession of the
> police on the date of this particular incident.

(N.T. Trial, 5/19/03, at 105-06).

With respect to Detective McBride's statement that he knew Patino,
presumably from before the incident in question, here again, this does
not impermissibly suggest prior criminal conduct.  <u>See</u>
<u>Commonwealth v. Carpenter</u>, 515 A.2d 531 (Pa. 1986)(parole
officer's testimony that before the crime in question he knew the
defendant did not suggest defendant was involved in prior criminal
activity).  Without offering any explanation, Detective McBride
merely indicated at trial that he knew Patino.  As the Commonwealth
points out, he did not indicate that he had arrested Patino in the past,
or that Patino had a prior record.

Since the statements made by Detective McBride did not
impermissibly suggest prior criminal activity, and given the trial
court's curative instruction, we find that the trial court did not abuse
its discretion in denying Patino's motion for mistrial.

(Doc. 15, Superior Court Opinion at pp. 8-10).

In addressing Patino's claim, the state court applied rules consistent with

prevailing principles established by the United States Supreme Court for the

adjudication of evidentiary challenges. Habeas review does not encompass state court rulings on the admission of evidence unless there is a federal constitutional violation. Only where the erroneous application of state law deprives a petitioner of a fundamental constitutional guarantee will a federal court inquire into the state court rulings. Donnelly v. DeChristoforo, 416 U.S. 637, 642-643 (1974). It is well-established "that states have broad discretion to develop rules of evidence [that] they will apply in their criminal proceedings . . . ." Lesko v. Owens, 881 F.2d 44, 51 (3d Cir. 1989). Furthermore, the trial judge has broad discretion with respect to the admission or exclusion of evidence. In re Merritt Logan, Inc., 901 F.2d 349, 359 (3d Cir. 1990). The narrow inquiry on federal habeas review is "whether the evidence's probative value is so conspicuously outweighed by its inflammatory content so as to violate a defendant's constitutional right to a fair trial." Lesko, 881 F.2d at 52. The state trial judge's rulings are accorded deference because he or she is "in a unique position to assess the relative probative value and inflammatory effect" of the evidence. Id.

In Swainson v. Varner, No. Civ. A. 99-6480, 2002 WL 241024 (E.D. Pa. Feb. 19, 2002), the United States District Court for the Eastern District of Pennsylvania addressed the issue of whether a state court's improper admission of

21

testimony regarding prior bad acts serves as a ground for federal habeas relief.

The court stated:

> It is not the court's role on habeas review to decide
> whether a state trial judge's decision to admit evidence
> pursuant to state evidentiary rules was proper. See
> Marshall v. Lonberger, 459 U.S. 422, 438 n.6, 103 S. Ct.
> 843, 74 L.Ed. 2d 646 (1983). Violation of a state
> evidence rule does not constitute grounds for habeas
> corpus relief absent a due process violation. Engel v.
> Isaac, 456 U.S. 107, 119, 102 S. Ct. 1558, 71 L.Ed. 2d
> 783 (1982). '[A] federal court cannot disturb on due
> process grounds a state court's decision to admit prior
> bad acts evidence unless admission of the evidence was
> arbitrary or so prejudicial that it rendered the trial
> fundamentally unfair.' Johnston v. Love, 940 F.Supp.
> 738 (E.D. Pa. 1996) (quoting Walters v. Maas, 45 F.3d
> 1355, 1357 (9th Cir. 1995)).

Id. at *9. In short, a state court's admission of evidence of prior crimes, wrongs, or

acts will be disturbed only where the probative value of such evidence is so greatly

outweighed by the prejudice flowing from its admission that admitting the

evidence denies a defendant due process of law. The relevant inquiry is whether

the evidence of prior bad acts is rationally connected to the crime charged. See

Carter v. Jago, 637 F.2d 449, 457 (6th Cir. 1980).

In the instant case, it cannot be concluded that the existence of a photograph

in a police file, or Detective McBride's statement that he knew Patino, demonstrates the required connection between any prior events and the incidents underlying the instant conviction. Multiple factors were present to support the state courts' findings that Patino engaged in the delivery of a controlled substance, and any prejudice was offset by the curative instruction which was given. Thus, there is no question that the state court decision was based on a reasonable determination of the facts in light of the evidence presented. Accordingly, the court finds that Patino is also not entitled to habeas corpus relief with regard to this claim. An appropriate order is attached.

Date: March 11, 2008

s/ William J. Nealon
**United States District Judge**

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

EDWIN PATINO,                         :    CIVIL ACTION NO. 3:CV-07-0426
                    Petitioner        :    (Judge Nealon)
         v.                           :
                                      :
EDWARD KLEM, et al.,                  :
                    Respondents       :

## ORDER

**AND NOW, THIS** 11th **DAY OF MARCH, 2008**, for the reasons set forth in

the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1.    All claims presented in the petition are **DENIED** based
      upon Petitioner's failure to demonstrate that (1) the
      applicable state court decisions were either contrary to,
      or involved an unreasonable application of, clearly
      established federal law, as determined by the Supreme
      Court of the United States; or (2) that those decisions
      were based on an unreasonable determination of the facts
      in light of the evidence presented in the State court
      proceeding as provided in 28 U.S.C. § 2254(d)(1) and
      (2).

2.    The Clerk of Court is directed to **CLOSE** this case.

3.    There is no basis for the issuance of a certificate of
      appealabilty.  See 28 U.S.C. § 2253(c).

                              s/ William J. Nealon
                              **United States District Judge**